UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| M.L., by and through her next friends, her parents D.L. and M.L., ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 5: 25-279-DCR |
| V. ) ) | |
| BOARD OF EDUCATION OF BOURBON COUNTY, et al., ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff M.L., by and through her next friends and parents, has moved for a preliminary injunction to compel the Defendants Board of Education of Bourbon County ("Board") and Larry Begley, in his individual and official capacity as Superintendent of Bourbon County Schools, to re-enroll M.L. in the Bourbon County School District ("District") and, thereafter, provide special education services to her under the Individuals with Disabilities Educational Improvements Act ("IDEA") as well as other federal and state laws. [Record No. 3]  However, the plaintiff's motion will be denied because the factors do not weigh in favor of granting the extraordinary relief sought.

**I. Background**

M.L. is a fifth grader who resides with her parents in the Nicholas County School District; however, she has attended Bourbon County Schools since 2020.[1] [*See* Record Nos. 7 at 2; 7-2 at 1–3; 8 at 2.]  M.L. was able to attend in that district, in part, because her mother

---

[1] *But see infra* note 2 discussing the conflicting dates and facts provided by the plaintiff.

is employed by the Bourbon County School District. [Record Nos. 1 at 4; 7 at 2; 7-2 at 1] The Board's non-resident pupil policy provides that "[n]onresident pupils will only be enrolled when they can be assigned to classes where the enrollment is below the allowable maximum or programs currently exist to meet educational needs." [Record No. 7-3 at 2] It further provides that, "[w]hen the number of nonresident students must be limited due to enrollment capacity. . . ., [s]udents of district employees will have priority over new applicants." *Id.*

M.L. was determined previously to be a child with a disability and "eligible for specially designed instruction under the categorical disability of attention deficit hyperactivity disorder, anxiety mood disorder, unspecified and fetal alcohol syndrome." [Record No. 1 at 4] Her disability frequently presents as "aberrant in-school behavior." *Id.* M.L.'s mother provided an affidavit which explained that M.L. had an Individualized Education Plan/Program ("IEP") while attending Nicholas County Schools during the 2019–2020 academic year. [Record No. 8] But once she was enrolled in the Bourbon County School District, her mother was informed that she no longer qualified for an IEP. *Id.* During M.L.'s second grade year, and while attending Bourbon County Schools, her behavior prompted the creation of an individual § 504 plan to address her support needs. *Id.*

Despite the § 504 plan, M.L. claims that she was "isolate[ed] her from her non-disabled peers while in the school setting" due to her unmanaged behaviors. [Record No. 1 at 4] The Board ultimately changed her school "placement from in-school to virtual home school." *Id.* M.L.'s parents responded by filing a due process complaint under 34 CFR § 300.507 on November 14, 2024. *Id.* But the parties settled their dispute rather than proceed with a due process hearing and potential appeal. *Id.* They agreed that M.L. would be permitted to "return to school but not spend the whole day in an isolated setting." *Id.* She was placed in a hybrid

educational environment when she returned, but roughly one week later she was again allegedly in a segregated placement. *Id.*

The parties created an IEP for M.L. on March 20, 2025.[2] [Record No. 7 at 7] The IEP provided for special education services in a highly structured special education classroom for 420 minutes daily. [Record No. 7-4 at 1] But M.L. was again removed from the in-school setting and placed in virtual home school about two months later. [Record No. 1 at 5] The following day (May 8, 2025), M.L.'s parents withdrew her from the Bourbon County School District to begin homeschooling. [Record Nos. 1 at 5 and 7-1]

In the past, M.L.'s mother was sent a form each year indicating her intent to have M.L. attend in the District for the upcoming school year. [Record No. 8 at 4] However, because M.L. had withdrawn, in early July 2025, her mother submitted an enrollment form attempting to have M.L. returned to the District for the 2025–2026 school year. [Record Nos. 1 at 5 and 7-2 at 1–2] Rather than keep M.L. at her previous school, her mother sought placement at a different elementary school in the District. [*See* Record No. 7-2 at 1–2.] Bourbon County Superintendent Begley denied re-enrollment, allegedly stating "it was his decision" and that she was being denied due to academic behavior and attendance. [Record Nos. 1 at 5 and 8 at 2] This lawsuit followed.

M.L. alleges that Begley denied her re-enrollment due to her disability and in retaliation for her 2024 due process complaint. [Record No. 1 at 5] She brings claims against the

---

[2] M.L.'s mother provides in her affidavit that M.L. had an IEP in Nicholas County Schools in 2019–2020. However, when she enrolled in Bourbon County Schools, she was told that she did not qualify for an IEP. [Record No. 8] The dates are conflicting because other pleadings (and even the affidavit) state that M.L. has been in Bourbon County Schools since 2019.

defendants for purportedly violating 29 U.S.C. § 794 (*i.e.*, § 504 of the Rehabilitation Act) (Count I); the Americans with Disabilities Act ("ADA") (Count II); the Individuals with Disabilities Act ("IDEA") (Count III); KRS 344.130 (Count IV); KRS 159.010 and Article II of the Kentucky Constitution (Count V); and the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983 (Count VII).[3] [Record No. 1] She seeks both injunctive relief as well as money damages for her asserted injuries.

Oral argument was held on M.L.'s motion for injunctive relief on August 25, 2025. [Record Nos. 3 and 5] She seeks an order compelling the defendants to re-enroll her in the Bourbon County School District for the 2025–2026 school year which has already commenced. [Record No. 5] Prior to the hearing, Defendant Begley moved to dismiss all claims against him in his official capacity, arguing that the plaintiff's claims may only be brought against the Board. [Record No. 6] And with respect to the claims asserted against him in his individual capacity, he contends they are redundant to those made against the Board. *Id.* In any event, he contends that the claims are barred by governmental and qualified immunity. *Id.* The defendants also oppose the request for injunctive relief and move to dismiss the Complaint under Rule 12(b)(1)[4] and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[3] Her Complaint does not include a Count VI.

[4] *But see Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 661–62 (E.D. Mich. 2015) (making the case that the IDEA exhaustion requirement is not jurisdictional despite *Metropolitan Board of Public Education v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999), because of the subsequent Supreme Court's decision in *Jones v. Bock,* 549 U.S. 199 (2007)); *see also L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty.*, 775 F. App'x 227, 231 n.3 (6th Cir. 2019) (holding that "[t]his circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement").

[Record No. 7] Following the hearing, M.L tendered a reply to address the defendants' arguments. [Record No. 12]

## II. Legal Standard

A preliminary injunction is an extraordinary remedy that should only be granted if the movants carry their burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). And "'[w]henever the extraordinary writ of injunction is granted, it should be tailored to restrain no more than what is reasonably required to accomplish its ends.'" *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 924 (6th Cir. 1978) (quoting *Consolidation Coal Co. v. Disabled Miners of Southern West Virginia*, 442 F.2d 1261, 1267 (4th Cir.), *cert. denied*, 404 U.S. 911 (1971)).

The fundamental purpose of a preliminary injunction is "to preserve the status quo during litigation to avoid an irreparable injury." *BE the Bush Recovery Ministries v. Coffee Cnty., Tenn.*, 2023 WL 110775, at *2 (6th Cir. Jan. 5, 2023) (citing *Resurrection Sch. v. Hertel*, 35 F.4th 524, 531 (6th Cir. 2022)). However, it can also be used to return the parties to the "'last, uncontested status preceding commencement of the controversy.'" *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976) (quoting *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472 (9th Cir. 1969)).

Plaintiffs seeking a preliminary injunction must show that "they are likely to succeed on the merits, that they are likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction would be in the public interest." *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2350 (2025) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also EOG Res., Inc. v. Lucky*

*Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. 2025). And while all these factors must be considered by the Court, the existence of irreparable harm (that is certain and immediate, not speculative or theoretical) is "mandatory." *EOG Res., Inc*, 134 F.4th at 874 (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019)). Without irreparable harm, there is no reason for the court to act at such an early juncture (rather than allow the case to proceed in the ordinary course). *Id.* at 885. Therefore, a "district court is 'well within its province' when it denies a preliminary injunction based solely on the lack of an irreparable injury." *D.T.*, 942 F.3d at 327 (quoting *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991)).

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." And a court has discretion to determine the appropriate amount of the bond, or to waive it under certain circumstances. *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 100 (6th Cir. 1982).

### III. Analysis

#### A. Likelihood of Success on the Merits

M.L. argues that she has a strong likelihood of success on the merits for the following reasons: Begley's decision not to re-enroll her was "arbitrary and based solely on her disability"; IDEA's "stay put" requirement supports the issuance of an injunction; and because she is a child with a disability, being denied access to the public school systems in Bourbon County because of her disability violates several relevant statutes. [Record No. 3-1 at 3–5]

Conversely, the defendants contend that M.L. has no likely or probable success on the merits because "the Complaint is barred under IDEA" and she "has no legal right to enrollment

in the Board's District." [Record No. 7 at 9]  Specifically, she failed to exhaust administrative procedures which include an "impartial administrative due process hearing and an opportunity to appeal." *Id.* at 3.  They insist that her exclusive remedies are with the Kentucky Department of Education under the IDEA.  *Id.* at 6.  The defendants further assert that M.L. has no legal right to enrollment in the Bourbon County School District because once she withdrew to home school, Nicholas County School District became the responsible entity for implementing her IEP and otherwise providing for her educational needs. *Id.* at 8.  Regarding the allegation that she was denied re-enrollment because of her disability and in retaliation of her due process complaint, the defendants reference district policy and insist that they could not re-enroll her because they do not have the staffing, classroom space, or programs to meet her educational needs due to increased enrollment.  *Id.* at 11.

The IDEA requires recipients of federal funds to provide a free appropriate public education ("FAPE") to children with disabilities.  *See* 20 U.S.C. § 1412(a)(1) (2012).  And this guarantee is protected with certain procedural safeguards.  *Id.* at § 1415.  Parties may present a due process complaint alleging a FAPE violation and may be entitled to a "due process hearing" before an impartial hearing officer.  *Id.* at § 1415(a)(6), (f).  A party aggrieved by the result of an IDEA due process hearing may appeal the result to the state educational agency. *Id.* at § 1415(g).  The outcome of the administrative review hearing may then be challenged in district court.  *Id.* at § 1415(i)(2).

These exhaustion requirements also apply to claims brought under other federal laws such as the ADA and § 504 when plaintiffs seek "relief that is also available under [the IDEA]." 20 U.S.C. § 1415(l).  The United States Supreme Court has provided that such claims must comply with the IDEA's exhaustion requirements when, at bottom, they seek relief for the

denial of a free appropriate public education. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 168 (2017) (citing 20 U.S.C. § 1415(l)).

In determining whether a lawsuit seeks relief for the denial of a FAPE, a court "should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 165. If the plaintiff alleges the denial of a FAPE, "the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA." *Id.* at 168. "But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id*. To assess the gravamen of the complaint, "a court should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id.* at 170. "[T]he IDEA guarantees individually tailored educational services, while Title II and § 504 promise nondiscriminatory access to public institutions." *Id.* at 170–71.

A court considers two hypothetical questions to aid in this determination: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school," and (2) "could an *adult* at the school have pressed essentially the same grievance?" *Id.* at 171 (emphasis in original). For example, a discrimination suit against a school for failing to provide wheelchair access ramps would not be subject to the IDEA's exhaustion requirements, because it could be brought against any public facility that lacked access ramps, and could be brought against the school by an adult. *See id*. at 171–72. Whereas a claim against a school for failing to provide remedial mathematics tutoring to a student with a disability could not be brought against another public facility, nor could it be brought by an adult at the school, rendering it subject to exhaustion. *See id*. at 172–73.

The United States Supreme Court has further clarified that when a plaintiff's lawsuit's gravamen is the denial of a FAPE, but the relief sought is *not* available under the IDEA, then exhaustion of the administrative remedies is *not* required. *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 146–47 (2023) (holding that the IDEA's exhaustion requirement did not preclude an Americans with Disabilities Act lawsuit because the plaintiff sought compensatory damages that the Act did not provide). Other exceptions to the exhaustion requirements include when: "'(1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm.'" *J.A. by & through S.A. v. Williamson Cnty. Bd. of Educ.*, 731 F. Supp. 3d 938, 951 (M.D. Tenn. 2024) (quoting *M.M. v. Paterson Bd. of Educ.*, 736 F. App'x 317, 319–20 (3d Cir. 2018) (internal citation omitted) (and citing *Donoho ex rel. Kemp v. Smith Cty. Bd. of Educ.*, 21 F. App'x 293, 297 (6th Cir. 2001)). Otherwise, exhaustion is required, and parents may not circumvent it by unilaterally removing their child from public school. *See Doe By & Through Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989).

Here, M.L. claims that she is being denied access to Bourbon County Schools, for which the IDEA provides no remedy. [Record No. 12 at 6] She argues that her denial is analogous to a wheelchair-bound child being denied access to a school because it lacks wheelchair ramps as hypothesized in *Fry*. *Id.* at 3 (citing *Fry*, 580 U.S. at 171). And because she contends that she is being denied her right to access the school, not challenging the adequacy of her special education services, the gravamen of her complaint falls under the ADA/Section 504, not IDEA. *Id.* at 3–4. Therefore, exhaustion is not required.

But the plaintiff's analogy misses a crucial point: the student must have a right to access the school in the first place before there can be some determination regarding whether he or

she is being denied access because of his or her disability. To clarify, the Court's hypothetical questions in *Fry* directed courts to ask, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school," and (2) "could an *adult* at the school have pressed essentially the same grievance?" *Fry*, 580 U.S. at 171. The first question (and the second by extension) in that hypothetical assumes the individual has a *right to access* the "public facility" like any other member of the public. The plaintiff attempts to shoehorn her situation into this hypothetical by beginning with the assumption that she has a *right* to enter the Bourbon County Schools. But as the plaintiff conceded during the hearing, she has no *statutory right* to enroll in the District, rather she relies on a policy under which she *may* be enrolled.

Consider an individual who has no right of access to a public school, perhaps because he or she has no student enrolled or other legitimate reason to gain entry. Assume that person visits the secured school while it is in session, rings the doorbell, and after explaining that he or she would like to listen to students play in gym class, is denied entry. Now assume that person is blind and insists he or she is being denied access because of that disability. That person would not fall under the hypotheticals in *Fry* because he or she would have no right to access the school in the same way he or she would in a place of public accommodation. To clarify, if that person were a student enrolled in that school or a parent who was needing to pick their child up from school for a doctor's appointment, M.L.'s analogy would work.

Try another way: the plaintiff's allegation that she is being denied the ability to enroll in Bourbon County School because of her disability is a claim alleging a denial of a FAPE. The plaintiff's Complaint alleges that the defendants failed to comply with the agreement the parties reached after M.L.'s parents filed a due process complaint. M.L. contends that they

- 10 -

agreed that she would be allowed to return to school but not spend the whole day isolated.  The defendants provided M.L.'s IEP that was created in March 2025 which appears to support the plaintiff's contention.  But M.L. insists that she was placed in a segregated setting about two months later and that is why her parents withdrew her from school to homeschool.

At bottom, the seminal disagreement triggering the above events was a change in M.L.'s placement (hybrid to segregated learning environment).  Therefore, a denial of FAPE *is* the gravamen of her Complaint.  Additionally, had her parents filed a due process complaint over the allegedly unilateral and unwarranted placement change, they could have triggered stay put rights which would have required that M.L. remain in the hybrid learning environment as provided for in her IEP.  But instead, they withdrew her entirely.

The stay put provision in the IDEA is one of the procedural safeguards available to a student and her parents.  *J.L. through S.L. v. Williamson Cnty., Tennessee, Bd. of Educ.*, No. 23-5704, 2024 WL 3634456, at *2 (6th Cir. Aug. 2, 2024).  For a stay put injunction to take effect, the plaintiff must show "(1) a proceeding conducted pursuant to 20 U.S.C. § 1415 is pending, and (2) the child has a then-current educational placement in which he must remain." *Id.* at *5 (citation modified).  When triggered, it maintains a child's placement and services until the dispute between the public school and parent is resolved, either by a due process complaint and potential appeal or an agreement between the parties.  *Id.* at *2 (citing 20 U.S.C. § 1415(j)).

Here, the stay put provision does not apply because there is no 20 U.S.C. § 1415 (due process complaint) proceeding pending.  And M.L. is not free to circumvent her procedural safeguards by withdrawing from public school and then seeking a court injunction rather than following the administrative process which allows for a statutory injunction.

- 11 -

*Fry* supports this conclusion. M.L.'s disagreement regarding the defendants' placement decision is a claim that could not be brought outside of the school setting and no adult could raise this grievance against the school. *See Fry*, 580 U.S. at 168, 171. Therefore, M.L. put the cart before the horse in seeking an injunction because she does not appear to have exhausted her administrative remedies. Further, there is no indication that she appealed Begley's decision to the Board (whose decision would be final per policy) or that she initiated a due process complaint regarding his denial. While it is possible that a future due process complaint would be rejected or denied based on her voluntary withdrawal from the District and homeschooling designation, M.L. has not made an adequate showing that exhaustion would be futile or that the relief she seeks cannot be granted by the administrative agency. [*See* Record Nos. 3-1 and 12.]; *J.A. by & through S.A.*, 731 F. Supp. 3d at 951. At this juncture and on the limited record before the Court, it clearly appears that exhaustion is required. *See Perez*, 598 U.S. at 146–47.

### B. Irreparable Harm/Injury

"To establish that they will face irreparable harm in the absence of injunctive relief, Plaintiffs must show that they are at risk of suffering some harm that 'is not fully compensable by monetary damages.'" *Int'l Union of Painters & Allied Trades Dist. Council No. 6 v. Smith*, _ F.4th _, No. 24-3282, 2025 WL 2170424, at *4 (6th Cir. July 31, 2025) (quoting *Overstreet*, 305 F.3d at 578)). During the hearing, M.L.'s counsel asserted that M.L. is being denied access to Bourbon County Schools because of her disability and, therefore, the injury to her constitutional rights is an irreparable harm for which there is no other remedy. M.L. further argues that she would lose "programs offered *to her* due to her disability." [Record No. 3-1 at 5] She also claims that if she is denied admission to Bourbon County Schools, her mother

would have to leave her job to stay home because there is no after school program available in her districted school. *Id.* And although she claimed that she would lose her school friends, during the hearing, her counsel conceded that she would have lost her friends either way because her mother sought placement at a *different* elementary school for the current school year. [*Compare* Record No. 7-2 at 1 (showing her last school attended was Bourbon Central Elementary) *with* Record No. 7-2 at 2 (selecting Cane Ridge Elementary as the school M.L. will attend).]

While a denial of a constitutional right can constitute irreparable harm, M.L. asks this Court to make the inference that she was denied the ability to enroll in Bourbon County Schools *because of* her disability, rather than pursuant to the District's policy of admitting nonresident students as the defendants contend. *See Mahmoud*, 145 S. Ct. at 2364. It is true that FAPE requires a child's resident school district to enroll that child, but that right does not extend to other schools to which the child may apply to attend out of district. *See* 34 C.F.R. § 300.201; 707 KAR 1:290 § 1. The defendants insist that Nicholas County Schools would be obligated to provide M.L. the programs and services outlined in her IEP as her districted school. Therefore, she cannot show an irreparable harm in losing any programs. [Record No. 7-6] And the plaintiff does not deny that Nicholas County would be obligated to provide her services provided for in her IEP. In short, while M.L. has a right to access a FAPE, she does not have an unfettered right to attend whatever public school she wishes.

The defendants argue that Bourbon County no longer has the space, staff or programs to support M.L.'s needs because of increased enrollment, and the District policy appears to allow such a denial under such circumstances. Had M.L. remained enrolled, she could have made a stronger showing that she was denied access to Bourbon County Schools *because of*

her disability. But, as here, where M.L. was voluntarily and unilaterally withdrawn by her parents (requiring her mother to file an application to enroll her for the current school year rather than the simple form she had filled out in years' past), she has not made a sufficient showing that she was denied access due to her disability to support the extraordinary relief she requests.

Next, regarding M.l.'s contention that her mother would have to quit her employment causing M.L. harm, it is too speculative and relies solely on indirect harm. M.L.'s mother withdrew her from school on May 8, 2025, to homeschool her and apparently was using Family and Medical Leave Act ("FMLA") to aid in this endeavor. [Record No. 8] But in making similar preparations for the upcoming school year, she claims she was told by her principal that she could only receive a half day off at a time (rather than less than a half day off as she hoped). And she contends this is why she can no longer homeschool M.L. or otherwise provide her necessary care if she attends school in Nicholas County. *Id.*

But the plaintiff does not show why she can no longer be cared for by someone else (such as her father or other relative) after school or otherwise. Nor does she show why a private individual's childcare services cannot be sought. And if these other options are attainable, why this harm could be remedied later by compensatory damages should M.L. prevail.

Here, M.L. attempts to rely on (anticipated) collateral harm to her mother's employment as a basis for granting M.L. injunctive relief. While it is arguable that her mother quitting her job could result in some indirect harm to M.L. through financial means (for which an injunction would not be appropriate), it is more difficult to say that it would cause *M.L.* direct harm. It is possible that her mother leaving her job would help and not harm M.L. in

the remaining intangible ways, especially considering her persistent behavior challenges in the public-school setting.

### C. Balancing the Equities

Under this factor, courts "ask where the greatest harm will fall" by "balanc[ing] the competing claims of injury" and "consider[ing] the effect on each party of the granting or withholding of the requested relief." *EOG Res., Inc.*, 134 F.4th at 886 (citing *Winter*, 555 U.S. at 24) (citation modified). M.L. argues that granting the injunction will not harm the defendants when balanced against the harm she faces if the Court were not to grant the injunction. [Record No. 7 at 6] She emphasizes that Begley's decision to deny re-enrolment was arbitrary and that she was not provided a way to contest it.[5] *Id.* And she argues that her family would face hardship if she is not allowed to re-enroll because her mother would need to quit her job. During the hearing, the defendants claimed that they would be harmed by an injunction because they do not have the staffing, classroom space, or programs to enroll M.L. due to increased enrollment in the 2025–2026 school year. M.L. insisted that the defendants' stated reasons were inconsistent with Begley's statement that the decision to deny enrollment was due to academic behavior and attendance.

Because M.L.'s mother waited until July 5, 2025, to apply for enrollment (after she figured out that she could not use FMLA in the way she hoped) and the school year has already commenced, granting the injunction would pose a significant harm to the defendants. [Record No. 8] They would need to scramble to find a place outside of the general classroom and staff

---

[5] The Bourbon County School District policy on nonresident enrollment allows a party aggrieved to appeal the Superintendent's denial to the Bourbon County Board of Education and that decision would be final. [Record No. 7-3 at 2] There is no indication that an appeal to the Board occurred.

to provide M.L. with her daily 420 minutes of time in the resource room as required by her IEP. [Record No. 7-4 at 1] M.L.'s family would also face hardship in needing to obtain after school care and other logistics involved with her mother working in a different county from where M.L. is districted to attend school. [Record No. 12 at 7]

Here, on the limited record, it appears that the defendants would face a greater harm if the Court were to grant the injunction than the one M.L. would face if the Court did not.

### D. Public Interest

M.L. contends that the "denial of equal access to a public entity due to a protected class is and has been an interest of the public since *Brown v Board of Education*." [Record No. 3-1 at 6] She asserts that the public interest favors her inclusion in Bourbon County Schools. The defendants offer that the purpose of requiring exhaustion is to allow "agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors." [Record No. 7 at 4 (citing *Urb. by Urb. v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996))]

This factor weighs against granting the injunction. The public interest is not advanced by out-of-district students picking and choosing which school to attend at the final hour. Nor is the public interest served by federal courts compelling school districts to enroll students who have not exhausted the administrative processes available to them.

### IV. Conclusion

Having considered the matter, it is hereby **ORDERED** that the plaintiff's motion for a preliminary injunction [Record No. 3] is **DENIED**.

Dated: September 4, 2025.

<u>Danny C. Reeves, District Judge</u>
United States District Court
Eastern District of Kentucky