UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| M.L., by and through her next friends, her parents D.L. and M.L., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 25-279-DCR |
| V. | ) ) | |
| BOARD OF EDUCATION OF BOURBON COUNTY, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Board of Education of Bourbon County ("Board") and Larry Begley, in his individual and official capacity as Superintendent of Bourbon County Schools, have moved to dismiss all claims asserted against them under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. [Record No. 7] They also move to dismiss Superintendent Begley as a party, in his individual and official capacity. [Record No. 6] The motions will be granted regarding the federal claims because Plaintiff M.L., by and through her next friends and parents, has failed to exhaust her administrative remedies and has failed to plausibly allege that she has a right of entitlement to re-enrollment in Bourbon County schools. M.L.'s state law claims against Begley also will be dismissed for similar reasons.

### I. Background

M.L. is a fifth grader who resides with her parents in the Nicholas County School District; however, she has attended Bourbon County Schools since 2020.[1] [*See* Record Nos.

---

[1] *But see infra* note 2 discussing the conflicting dates and facts provided by the plaintiff.

7 at 2; 7-2 at 1–3; 8 at 2.]  M.L. was able to attend in that district, in part, because her mother was/is employed by the Bourbon County School District ("District").  [Record Nos. 1 at 4; 7 at 2; 7-2 at 1]  The Board's non-resident pupil policy provides that "[n]onresident pupils will only be enrolled when they can be assigned to classes where the enrollment is below the allowable maximum or programs currently exist to meet educational needs."  [Record No. 7-3 at 2]  the policy further provides that, "[w]hen the number of nonresident students must be limited due to enrollment capacity. . . ., [s]tudents of district employees will have priority over new applicants."  *Id.*

M.L. was determined previously to be a child with a disability and "eligible for specially designed instruction under the categorical disability of attention deficit hyperactivity disorder, anxiety mood disorder, unspecified and fetal alcohol syndrome."  [Record No. 1 at 4]  Her disability frequently presents as "aberrant in-school behavior."  *Id.*  M.L.'s mother provided an affidavit which explained that M.L. had an Individualized Education Plan/Program ("IEP") while attending Nicholas County Schools during the 2019–2020 academic year.  [Record No. 8]  But once she was enrolled in the Bourbon County School District, her mother was informed that she no longer qualified for an IEP.  *Id.*  During M.L.'s second grade year, and while attending Bourbon County Schools, her behavior prompted the creation of an individual § 504 plan to address her support needs.  *Id.*

Despite the § 504 plan, M.L. claims that she was "isolat[ed] her from her non-disabled peers while in the school setting" due to her unmanaged behaviors.  [Record No. 1 at 4]  The Board ultimately changed her school "placement from in-school to virtual home school."  *Id.*  M.L.'s parents responded by filing a due process complaint under 34 CFR § 300.507 on November 14, 2024.  *Id.*  The parties, however, settled their dispute rather than proceed with

a due process hearing and potential appeal. *Id.* They agreed that M.L. would be permitted to "return to school but not spend the whole day in an isolated setting." *Id.* She was placed in a hybrid educational environment when she returned, but roughly one week later she was again allegedly in a segregated placement. *Id.*

The parties created an IEP for M.L. on March 20, 2025.[2] [Record No. 7 at 7] The IEP provided for special education services in a highly structured special education classroom for 420 minutes daily. [Record No. 7-4 at 1] But M.L. was again removed from the in-school setting and placed in virtual home school about two months later. [Record No. 1 at 5] The following day (May 8, 2025), M.L.'s parents withdrew her from the Bourbon County School District to begin homeschooling. [Record Nos. 1 at 5 and 7-1]

In the past, M.L.'s mother was sent a form yearly indicating her intent to have M.L. attend in the District for the upcoming school year. [Record No. 8 at 4] However, because M.L. had withdrawn, in early July 2025, her mother submitted an enrollment form attempting to have M.L. returned to the District for the 2025–2026 school year. [Record Nos. 1 at 5 and 7-2 at 1–2] Rather than keep M.L. at her previous school, her mother sought placement at a different elementary school in the District. [*See* Record No. 7-2 at 1–2.] Bourbon County Superintendent Begley denied M.L.'s re-enrollment, allegedly stating "it was his decision" and that she was being denied due to academic behavior and attendance. [Record Nos. 1 at 5 and 8 at 2]

---

[2]  M.L.'s mother provides in her affidavit that M.L. had an IEP in Nicholas County Schools in 2019–2020. However, when she enrolled in Bourbon County Schools, she was told that she did not qualify for an IEP. [Record No. 8] The dates are conflicting because other pleadings (and even the affidavit) state that M.L. has been in Bourbon County Schools since 2019.

M.L. alleges that Begley denied her re-enrollment due to her disability and in retaliation for her 2024 due process complaint.  [Record No. 1 at 5]  She brings claims against the defendants for purportedly violating 29 U.S.C. § 794 (*i.e.*, § 504 of the Rehabilitation Act) (Count I); the Americans with Disabilities Act ("ADA") (Count II); the Individuals with Disabilities Act ("IDEA") (Count III); KRS 344.130 (Count IV); KRS 159.010 and Article II of the Kentucky Constitution (Count V); and the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983 (Count VII).[3]  [Record No. 1]

Oral argument was held on M.L.'s motion for injunctive relief on August 25, 2025. [Record Nos. 3 and 5]  M.L. sought an order compelling the defendants to re-enroll her in the Bourbon County School District for the 2025–2026 school year which had already commenced.  [Record No. 5]  The Court entered a Memorandum Opinion and Order following the hearing, denying M.L.'s motion for a preliminary injunction.  [Record No. 14]

Defendant Begley moves to dismiss all claims against him in his official capacity, arguing that the plaintiff's claims may only be brought against the Board.  [Record No. 6]  And with respect to the claims asserted against him in his individual capacity, Begley contends they are redundant to those made against the Board.  *Id.*  In any event, he insists that the claims are barred by governmental and qualified immunity.  *Id.*  M.L. concedes that the claims against Begley in his official capacity should be dismissed but insists that he is not entitled to qualified immunity for the individual capacity claims.  [Record No. 15 at 2]

The defendants also move to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 7]  They contend that M.L.'s federal

---

[3] Her Complaint does not include a Count VI.

claims require exhaustion under the IDEA and, in any event, she has no legal right of access to Bourbon County Schools.  *Id.* at 9.  M.L. argues that her Complaint solely concerns access to that school district, not her educational services and that she is being denied access because of her disability.  [Record No. 12 at 1–2]

## II.  Legal Standard

A 12(b)(1)[4] motion to dismiss "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists."  *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  A facial challenge to the Court's subject matter jurisdiction "merely questions the sufficiency of the pleading."  *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss."  *Id.*  "[T]he party claiming jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject matter."  *Id.* at 324.

A plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face'" to survive a motion to dismiss under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

---

[4] *But see Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 661–62 (E.D. Mich. 2015) (making the case that the IDEA exhaustion requirement is not jurisdictional despite *Metropolitan Board of Public Education v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999), because of the subsequent Supreme Court's decision in *Jones v. Bock,* 549 U.S. 199 (2007)); *see also L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty.*, 775 F. App'x 227, 231 n.3 (6th Cir. 2019) (holding that "[t]his circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement").

*Twombly*, 550 U.S. 544, 570 (2007)).  And while the Court need not accept legal conclusions or unwarranted factual inferences, the allegations contained in the complaint are accepted as true and all reasonable inferences are construed in the plaintiff's favor.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Courts are generally limited to considering the pleadings in addressing a motion to dismiss, but they may consider certain items without converting the motion to one for summary judgment.  This includes materials such as public records, exhibits attached to the complaint, and those attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein."  *Bassett*, 528 F.3d at 430.

### III. Analysis

#### A.  Federal Claims

The defendants argue that all M.L.'s federal claims require exhaustion under IDEA because the gravamen of her Complaint is a denial of a free appropriate public education ("FAPE").  [Record No. 7 at 3]  They further contend that M.L. "has no legal right to enrollment in the Board's District" because she is not a resident of that district.  [Record No. 7 at 9] Conversely, M.L. argues that Begley's decision not to re-enroll her was based solely on her disability and that denial of access to the public-school systems in Bourbon County because of her disability violates federal statutes.  [Record No. 12 at 1]

The IDEA requires recipients of federal funds to provide a free appropriate public education to children with disabilities.  *See* 20 U.S.C. § 1412(a)(1) (2012).  And this guarantee is protected with certain procedural safeguards.  *Id.* at § 1415.  Parties may present a due

- 6 -

process complaint alleging a FAPE violation and may be entitled to a "due process hearing" before an impartial hearing officer. *Id.* at § 1415(a)(6), (f). A party aggrieved by the result of an IDEA due process hearing may appeal the result to the state educational agency. *Id.* at § 1415(g). The outcome of the administrative review hearing may then be challenged in district court. *Id.* at § 1415(i)(2).

These exhaustion requirements also apply to claims brought under other federal laws such as the ADA, § 504, and Section 1983 when plaintiffs seek "relief that is also available under [the IDEA]." 20 U.S.C. § 1415(l). The United States Supreme Court has provided that such claims must comply with the IDEA's exhaustion requirements when, at bottom, they seek relief for the denial of a free appropriate public education. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 168 (2017) (citing 20 U.S.C. § 1415(l)).

In determining whether a lawsuit seeks relief for the denial of a FAPE, a court "should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 165. If the plaintiff alleges the denial of a FAPE, "the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA." *Id.* at 168. "But if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id.* To assess the gravamen of the complaint, "a court should attend to the diverse means and ends of the statutes covering persons with disabilities—the IDEA on the one hand, the ADA and Rehabilitation Act (most notably) on the other." *Id.* at 170. "[T]he IDEA guarantees individually tailored educational services, while Title II and § 504 promise nondiscriminatory access to public institutions." *Id.* at 170–71.

A court considers two hypothetical questions in aid of this determination: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a

public facility that was *not* a school," and (2) "could an *adult* at the school have pressed essentially the same grievance?" *Id.* at 171 (emphasis in original). For example, a discrimination suit against a school for failing to provide wheelchair access ramps would not be subject to the IDEA's exhaustion requirements, because it could be brought against any public facility that lacked access ramps, and could be brought against the school by an adult. *See id.* at 171–72. Whereas a claim against a school for failing to provide remedial mathematics tutoring to a student with a disability could not be brought against another public facility, nor could it be brought by an adult at the school, rendering it subject to exhaustion. *See id.* at 172–73.

The United States Supreme Court has further clarified that when a plaintiff's lawsuit's gravamen is the denial of a FAPE, but the relief sought is *not* available under the IDEA, then exhaustion of the administrative remedies is *not* required. *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 146–47 (2023) (holding that the IDEA's exhaustion requirement did not preclude an Americans with Disabilities Act lawsuit because the plaintiff sought compensatory damages that the Act did not provide). Other exceptions to the exhaustion requirements include when: "'(1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm.'" *J.A. by & through S.A. v. Williamson Cnty. Bd. of Educ.*, 731 F. Supp. 3d 938, 951 (M.D. Tenn. 2024) (quoting *M.M. v. Paterson Bd. of Educ.*, 736 F. App'x 317, 319–20 (3d Cir. 2018) (internal citation omitted) (and citing *Donoho ex rel. Kemp v. Smith Cty. Bd. of Educ.*, 21 F. App'x 293, 297 (6th Cir. 2001)). Otherwise, exhaustion is required, and parents may not circumvent it by unilaterally removing their child from public school. *See Doe By & Through Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989).

- 8 -

As discussed previously in the Memorandum Opinion and Order denying M.L.'s motion for a preliminary injunction, M.L. has failed to show that she has a *statutory* right to access Bourbon County Schools. [Record No. 14 at 9–10]  At best, she has established a *policy* under which she may be enrolled as a child of a Bourbon County School teacher.  The lack of entitlement to access the District is problematic for her argument that she is being denied access because of her disability.  And her unilateral removal from the District to homeschool undercuts potential access rights she may have had if she remained enrolled.  Put simply, M.L.'s argument that exhaustion is not required because she claims a denial of access fails because she shows no entitlement to access in the first place.

In support of M.L.'s claim that she was denied reenrollment because of her disability, her mother contends that Begley told her that she was being denied due to academic behavior and attendance issues.  [Record No. 12-2 at 2]  The defendants assert that once she was unilaterally withdrawn, Nicholas County Schools became the district with the statutory duty to provide her a public education.  [Record No. 7 at 2]  They further insist that she was denied reenrollment due to a lack of programs, staff, and facility space, resulting from increased enrollment.  *Id.*  But M.L. argues that this stated basis establishes that she was denied access because of her disability as her IEP required a highly structured classroom.

Here, M.L. has not met her burden in showing that exhaustion of her administrative remedies would be futile or inadequate, her issue is purely a legal one, the administrative agency cannot grant relief, or exhaustion would cause severe or irreparable harm.  *J.A. by & through S.A.*, 731 F. Supp. 3d at 951.  She offers no reason what she could not avail herself of the process set forth in the nonresident student enrollment policy which allowed her to appeal

- 9 -

Begley's denial to the Board.  Likewise, she provides no explanation for failing to file a due process complaint.

Exhaustion is required, in part, because courts benefit from a developed administrative record when reviewing educational agency decisions.  This process also allows states to remedy their own mistakes without interference from courts.  In summary, M.L. had remedies available to challenge the defendants' decisions but rather than avail herself of those avenues, she filed this lawsuit in federal court.  Her Section 504, ADA, IDEA, and Fourteenth Amendment equal protection claims will be dismissed for the reasons discussed in the Court's prior order and because she has not demonstrated a legal right to access and has not exhausted her remedies under the IDEA.  [Record No. 14]

**B.  State Law Claims**

The plaintiff concedes that she cannot bring state law claims against the Bourbon County Board of Education or Superintendent Begley in his official capacity.[5]  [*See* Record No. 15 at 2.]  The defendants insist that M.L. fails to state a claim against Begley in his individual capacity and, in any event, the state law claims fail as he is entitled to official qualified immunity because he was exercising a discretionary function when he denied M.L. re-enrollment in the Bourbon County School District.  [Record Nos. 6 and 16]

While M.L.'s Kentucky Civil Rights Act ("KCRA") (KRS 344.130) and KRS 159.010 and Article II of the Kentucky Constitution claims do not have exhaustion requirements, the reasoning set forth above dismissing M.L.'s federal claims support dismissal of her remaining

---

[5] M.L. failed to address the defendants' argument that claims under the IDEA, ADA, and Section 54 could not be brought against individuals, indicating that she is abandoning those claims against Begley.

state claims.  As an initial matter, it is unclear what exactly she is claiming under KRS 344.130. That statute defines exceptions to places of public accommodation.  As discussed previously, M.L. has not shown any right of entitlement to access the Bourbon County Schools; therefore, notwithstanding that she cited definitions, her denial of entry does not analogize well with a place of public accommodation.

Her claim under KRS 159.010 and Article II of the Kentucky Constitution likewise lacks a basis.  That statute requires parents to send children to public schools in the "district in which the child resides."  KRS 159.010(1)(a).  M.L.'s Complaint references Article II of the Kentucky Constitution in asserting that her denial of enrollment in Bourbon County schools was an arbitrary use of the defendants' power.  [Record No. 1 at 8–9]  Perhaps she meant Section 2 of the Bill of Rights which provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."  Either way, she fails to state a claim upon which relief can be granted because she resides in Nicholas County.

Finding no viable claim against Begley, the undersigned declines to address his qualified immunity defense.

### IV.  Conclusion

Based upon the analysis set forth in the Memorandum Opinion and Order denying M.L.'s motion for a preliminary injunction and the analysis herein, it is hereby

**ORDERED** as follows:

1.    The Defendants Board of Education of Bourbon County and Larry Begley, in his individual and official capacity as Superintendent of Bourbon County Schools' motions to dismiss [Record Nos. 6 and 7] are **GRANTED**.

- 11 -

2.    Plaintiff M.L.'s claims against the defendants are **DISMISSED** in their entirety,

with prejudice.

Dated:  October 9, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky